IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KEN THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-1040-CM |
| ) | |
| CITY OF WICHITA, KANSAS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the motion of third party Dan Voorhis to quash defendants' trial subpoena (Doc. 87). This motion has been referred to the undersigned Magistrate Judge as a non-dispositive matter pursuant to D. Kan. Rule 72.1.1(i) and 28 U.S.C. § 636(b)(3). As explained in greater detail below, the motion is GRANTED IN PART and DENIED IN PART.

### Background

On June 2, 2011 in Wichita, Kansas, fire engulfed an industrial complex at which plaintiff leased commercial space. Plaintiff claims that during the fire he was unlawfully arrested and assaulted when he attempted to approach the fire chief to discuss the fire. Plaintiff denies any inappropriate behavior and asserts that he simply approached the firemen to warn them about dangerous conditions, including a natural gas line, electrical line, and ammonia line.

Defendants dispute this characterization and assert that, at the time of the heavily-involved structure fire, plaintiff's identity was unknown to firefighters and, although he was warned on multiple occasions, plaintiff refused to stay back from the dangerous fire. After plaintiff was observed attempting to enter the building at multiple locations, a fireman informed plaintiff that the conditions were unsafe and he must stay away from the building.  At some point during this exchange, plaintiff swore repeatedly at the firemen and lunged at the fire investigator.  When a police officer tried to intervene, plaintiff punched him.  Defendants assert that the policemen and firefighters were merely trying to control plaintiff's irrational behavior in order to effectively fight the fire.

Seven months later, on January 29, 2012 *The Wichita Eagle* published a news article about the effects of the fire and the altercation between plaintiff and the officers. That article was written by reporter Dan Voorhis.  The article states in part that "Thomas said that Wichita firefighters wouldn't listen when he told them a high-pressure gas line to the plant had to be turned off.  When he moved to do it anyway, he was wrestled to the ground, he said."  When questioned during his deposition, plaintiff denied making the statement to Voorhis.

Both parties' counsel attempted to persuade Voorhis to voluntarily testify. Voorhis refused to do so but produced an affidavit to counsel which contained authentication of his article and confirmation that the information in the article was accurate.[1]  After plaintiff refused to stipulate to the affidavit's admissibility at trial,

---

[1] *See* Aff. of Dan Voorhis, attached as Ex. D, Defs.' Mem. Supp., Doc. 88.

defendants properly served Voorhis through his counsel with a subpoena for his attendance at the trial previously scheduled for September 10, 2014.[2]

### Voorhis' Motion to Quash Trial Subpoena (Doc. 87)

Consistent with Fed. R. Civ. P. 45, Voorhis timely filed his motion to quash the subpoena. He asserts that the information sought is protected by the First Amendment reporter's privilege and the Kansas journalist privilege found in K.S.A. § 60-480, *et seq*. In the alternative, Voorhis requests that the subpoena be modified to limit the scope of questioning to the information provided in his previously-offered affidavit.

Defendants argue that the cases cited in Voorhis' briefing are distinguishable and do not support quashing the subpoena, and that the applicable balancing test weighs in favor of enforcing the subpoena. However, defendants agreed to limit their questioning at trial to that information found in Voorhis' affidavit. Plaintiff did not respond to the motion to quash and is therefore assumed not to oppose the motion.[3]

Voorhis requested alternative relief and defendants approved of that request. Given this accord between the parties, the court could simply accept this agreement and conclude further inquiry. However, the court believes brief discussion of the merits of the motion is warranted.

---

[2] The trial has now been postponed (*see* Doc. No. 95). However, Voorhis and the defendants have requested by email to the undersigned Magistrate Judge that this matter be heard on its merits with the understanding that the trial subpoena will be amended to reflect the new trial date.

[3] D. Kan. Rule 7.4(b).

**Applicable law**

Fed. R. Civ. P. 45 regulates subpoenas directed to non-parties. This rule provides that "on timely motion, the court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies."[4] Voorhis contends that both federal and state testimonial privileges apply and the court must quash the subpoena.

Plaintiff's claims of false arrest and excessive force are rooted in federal question jurisdiction and so the court must, at least in part, review the question of privilege under federal law.[5] Following the United State Supreme Court's ruling in *Branzburg v. Hayes*,[6] the Tenth Circuit in *Silkwood v. Kerr-McGee Corp.*[7] articulated a balancing process by which the trial court reviews a journalist's First Amendment privilege. The court established the following criteria for consideration: 1) the nature of the evidence sought; 2) the effort to obtain the information from other sources; 3) the necessity of the information to the requesting party; and 4) the relevance of the information to the matter.[8]

But plaintiff also makes pendent claims sounding in state common law tort. In 1978, the Kansas Supreme Court recognized a newsperson's privilege in *State v. Sandstrom*.[9] In 2010, the Kansas legislature codified that privilege in K.S.A. § 60-480, *et*

---

[4] Fed. R. Civ. P. 45(d)(3)(A)(iii).
[5] *See infra* note 11 and accompanying text.
[6] *Branzburg v. Hayes*, 408 U.S. 665 (1972).
[7] *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 437 (10th Cir. 1977) (citing *Branzburg*, 408 U.S. at 681-82).
[8] *Id*. at 438.
[9] 224 Kan. 573, 574, 581 P.2d 812, 814 (1978).

4

*seq*. In K.S.A. § 60-482, the journalist is awarded a qualified privilege against disclosure of "any previously undisclosed information or the source of such information procured while acting as a journalist." The privilege remains intact unless the party seeking disclosure can show by a preponderance of the evidence that the information is "1) material and relevant to the proceeding for which the disclosure is sought; 2) could not, after a showing of reasonable effort, be obtained by readily available alternative means; and 3) is of a compelling interest."[10]

Because plaintiff's claims include both federal and state law claims, the Tenth Circuit has generally directed that the court consider both bodies of law.[11] Voorhis argues that state law should be reviewed, especially if it provides greater protection, but defendants focus solely on federal privilege. The court finds that the differences between the applicable laws are insignificant when applied to these facts and will therefore look generally to both bodies of law without expressing an opinion as to which law should apply.

**Analysis**

The purpose of the federal privilege is to encourage the free flow of information by protecting the reporter's confidential sources of information.[12] The state "shield

---

[10] K.S.A. § 60-482.
[11] *Sprague v. Thorn Americas*, 129 F.3d 1355, 1368-69 (10th Cir. 1997) (citing *Motley v. Marathon Oil Co.,* 71 F.3d 1547 (10th Cir.1995), *cert. denied,* 517 U.S. 1190 (1996)) (finding that "with both federal claims and pendent state law claims implicated, we should consider both bodies of law under *Motley* and Fed. R. Evid. 501.").
[12] *Silkwood*, 563 F.2d at 437 (noting that the Supreme Court in *Branzburg* recognized a "privilege which protects information given in confidence to a reporter.")

statute" is perhaps broader, extending protection to "any *previously undisclosed* information or the source of any such information."[13]  Whether nonconfidential information falls within the federal privilege is a subject of debate which the Circuit has not yet reached.  In *United States. v. Foote*, a criminal case in which only federal privilege law applied, Magistrate Judge David Waxse found that nonconfidential information obtained by a journalist is also privileged, but acknowledged that other courts have held otherwise.[14]  The Second Circuit has found that "the nature of the press interest protected by the privilege is narrower . . . when protection of confidentiality is not at stake, [and] the privilege should be more easily overcome."[15]  Regardless of whether privilege applies, however, the court reaches the same result.

After review of Voorhis' affidavit, the court agrees with defendants that the primary reason for his testimony is to simply confirm that the *Wichita Eagle* article is accurate and that plaintiff made the statement at issue.  Voorhis' testimony will not force the revelation of some confidential source or even any "previously undisclosed information;" rather, the reporter's sole *identified* source is plaintiff himself.  Because the information sought is not confidential, the court could find that the information sought lies outside the journalist's privilege.

---

[13] K.S.A. § 60-482.

[14] *United States v. Foote*, 2002 WL 1822407, at *2, n.9 (D. Kan. Aug. 8, 2002) (surveying cases and comparing the holdings of Second and Fifth Circuit cases finding that nonconfidential information is not privileged) (citations omitted).

[15] *New England Teamsters & Trucking Indus. Pension Fund v. New York Times Co.*, 2014 WL 1567297, at *3 (S.D.N.Y. Apr. 17, 2014) (quoting *Gonzales v. National Broadcasting Co.,* 194 F.3d 29, 36 (2d Cir.1999)).

Assuming the information sought from Voorhis is privileged for discussion purposes only, an analysis of both the *Silkwood* and K.S.A. § 60-482 criteria compels the same conclusion. Defendants attempted to reach agreements with plaintiff's and movant's counsel to avoid the necessity of Voorhis' testimony, but without such a stipulation Voorhis is the only person who can testify as to the validity of the published statement. While the court understands that this may create a burden for Voorhis, and that admission of his affidavit would seem a more practical solution, neither party advances any applicable authority for doing so and the court has been unable to locate any authority.[16] Furthermore, the alleged statement made by plaintiff goes to the heart of his claims for unlawful arrest and malicious prosecution. If plaintiff had been attempting to enter the building, his actions might provide probable cause for his arrest and therefore his statement is relevant to the claims and defenses of the parties. Because the court finds that defendants have met their burden to show relevancy, necessity, and compelling interest of the proposed testimony, Voorhis' motion is **DENIED**.

However, in the event his motion to quash were denied, Voorhis suggested the alternative relief that his trial testimony be limited to the information in his affidavit and defendants agreed. Given plaintiff's election not to respond to the motion, the court views Voorhis' proposal as unopposed and will therefore **GRANT** that portion of the motion.

---

[16] Voorhis cites one case, *In re Jacobs*, 460 B.R. 149, 156 (Bankr. E. D. Mich. 2011), but that case is distinguishable. In *Jacobs*, the parties agreed to the admissibility of the affidavit at trial. *Id*. Here, plaintiff apparently does not agree.

7

**IT IS THEREFORE ORDERED** that movant Voorhis' motion to quash (**Doc. 87**) is **DENIED IN PART** in that he is ordered to comply with defendants' subpoena for his testimony at trial.

**IT IS FURTHER ORDERED** that Voorhis' alternative request for relief is **GRANTED**, and his trial testimony must be limited to the information contained in his previously-disclosed affidavit.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 3rd day of September 2014.

S/ Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge